SHERMAN *v.* KOPELOVE *et al.*

(*Knoxville*, September Term, 1943.)

Opinion filed January 8, 1944.

JENNINGS, O'NEIL & JARVIS, of Knoxville, for complainant.

W. L. AMBROSE, JR., of Knoxville, for cross-complainants S. H. Robinson and S. H. Robinson & Co., Inc.

WILBUR W. PIPER, of Knoxville, for defendants Ralph Kopelove and Ralph Schear.

MR. JUSTICE PREWITT delivered the opinion of the Court.

The complainant, Joe Sherman, and the defendant, Ralph Kopelove, were partners in an iron recovery firm known as Southern Materials Company, which operated at Lenoir City, Tennessee, and their business was to reclaim iron from a dump of the Lenoir Car Works. The defendant, S. H. Robinson & Company, Incorporated, purchased the partnership contract from Sherman and Kopelove for $4,500 represented by a note payable to Kopelove. The proof shows that this note was executed in Ohio in the presence of Max Robinson, one of the firm of S. H. Robinson & Company, Incorporated, Joe Sherman, and Ralph Kopelove. The note remained in the possession of Kopelove for some months, and payments were made to him reducing the note to approximately $2,500.

The complainant Sherman filed his bill in the chancery court on November 7, 1942, seeking to attach the balance of the money owing by Max Robinson to the partnership. Thereupon the defendant Kopelove and his attorney made a trip to Knoxville to see Robinson about the settlement of the balance, and told Robinson that he (Kopelove) would settle with Sherman. Robinson testified that Kopelove and Sherman were partners.

Not being able to see Sherman, Kopelove, his attorney, and his brother-in-law Schear returned to Ohio, and Schear, claiming that he had purchased the note from Kopelove, obtained a confessed judgment in Ohio. Then Schear through his attorney at Knoxville, W. W. Piper, instituted a suit in the Circuit Court of Knox County on the foreign judgment and also on the note. S. H. Robinson & Company, Incorporated, then filed an answer and a bill of interpleader, and paid the amount of the note, approximately $2,500, into the registry of the court.

Thereupon Sherman filed an amended and supplemental bill attacking the transfer of the note as a fraud and made Schear a party defendant. Publication was duly made for Kopelove and Schear, and written notice of the suit was served on Mr. Piper, Schear's attorney of record in the suit in the circuit court. Neither Kopelove nor Schear made any defense in the instant case.

The deposition of the complainant Sherman was taken, and the deposition of Max Robinson of the firm of S. H. Robinson & Company, Incorporated, was also taken. The latter testified that he understood that complainant and Kopelove were partners; that the reason the note was made payable to Kopelove was because the contract was in his name; that when Kopelove and Schear came to Knoxville after the original bill herein was filed they stated to him that they wanted to make a settlement with Sherman, who was out of the city that day; and that Schear made no claim that he was the owner of the note at that time.

The chancellor held that Sherman was a partner of Kopelove in the purchase of the iron; that Sherman had known Kopelove in Ohio for several years before he moved to Knoxville; that Kopelove, Schear and the Ohio

attorney for Kopelove and Schear were conspirators; and that Schear had no interest in the note.

The defendants Kopelove and Schear have filed the record for writ of error and contend that their constitutional rights have been violated, and that the court had no jurisdiction of the cause as no legal notice was given them of the proceedings.

The defendants contend that *Blanton* v. *Hall,* 49 Tenn., 423, is authority for their right to file the record for writ of error without entering their appearance. While counsel for complainant insist that under *Taylor* v. *Sledge,* 110 Tenn., 263, 75 S. W., 1074, the filing of the record for writ of error amounted to an appearance in the cause, the court pointing out in the latter case that the aggrieved defendant had his remedy by a suit in chancery to enjoin the proceedings.

Pretermitting an expression on this question, we are of opinion that *Morrow* v. *Fossick,* 71 Tenn., 129, is controlling. In that case it was held that where a creditor has attached a debt as due to his nonresident debtor, the money was paid into court, and the debtor put in a plea that the fund was not his property, but the property of a nonresident firm of which he was a member, whereupon the creditor filed an amended and supplemental bill against the members of the firm to ascertain the interest of the debtor in the fund, and the defendants moved to dismiss the bill upon the ground that the court had no jurisdiction of the person of the defendants, that the motion was not well taken.

In the instant cause it appears that while no appearance was made by the defendants, the lower court acquired jurisdiction of the property by reason of its location in the state and the service of the attachment and publication thereon. We have examined the plead-

ings, the process, the publication notices, and the attachments, and we are of opinion that the fund in question was in the custody of the court not only under the statutory provisions relating to attachments, but under the powers incident to the issuance of extraordinary process by the chancery court. The writ of error is entirely technical. There is no showing that there has been any fraud or any advantage taken of the defendants whatever, but on the other hand the record discloses that the defendants are guilty of fraud and a conspiracy, and do not come into this court with clean hands.

The record discloses that defendants came into this jurisdiction to enforce collection on the note or the foreign judgment; that they employed an attorney to reduce the note to judgment here or to enforce the foreign judgment; and that in addition to making publication for these two defendants, the attorney of record in the circuit court for these same two defendants was served with written notice of the present cause. The defendants cannot now be heard to say that their constitutional rights, or failure to have notice and an opportunity to be heard, have been violated.

It results that we find no error in the decree of the chancellor, and it is affirmed.